**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **PARSONS & WHITTEMORE** ) <br> **ENTERPRISES CORPORATION,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **CELLO ENERGY LLC, et al.** ) <br> ) <br> **Defendant.** ) <br> ) | **CIVIL ACTION NO. 07-0743-CG-B** <br><br><br> **JURY DEMAND** |

<u>**ANSWER AND COUNTERCLAIM OF BIOFUELS OPERATING COMPANY, LLC**</u>

<u>**ANSWER**</u>

<u>First Defense</u>

Defendant BioFuels Operating Company, LLC ("BioFuels") hereby answers the individual paragraphs of the Complaint of Plaintiff Parsons & Whittemore Enterprises Corporation ("P&W") as follows.

1.     BioFuels admits that P&W's Complaint seeks declaratory relief. On information and belief, BioFuels states that P&W paid the amount of $2.5 million to Forest Energy Systems, LLC ("FES"), now Cello Energy, LLC ("Cello"), for an option to acquire a minority interest in FES upon the payment of an additional $10 million. BioFuels denies the remaining allegations set forth in Paragraph 1.

2.     This allegation does not require an answer, as it calls for a conclusion of law.

3.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3, and thus denies the allegations set forth in Paragraph 3.

4.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4, and thus denies the allegations set forth in Paragraph 4.

5.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, and thus denies the allegations set forth in Paragraph 5.

6.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6, and thus denies the allegations set forth in Paragraph 6.  BioFuels specifically denies that Cello has contracted to disclose and use its proprietary technology (the "Technology") in violation of P&W's rights.

7.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7, and thus denies the allegations set forth in Paragraph 7.  BioFuels specifically denies that Cello has contracted to disclose and use the Technology in violation of P&W's rights.

8.    BioFuels admits the allegations set forth in Paragraph 8, except that it specifically denies that the sole member of Khosla Services, LLC is Vinod Khosla.

9.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9, and thus denies the allegations set forth in Paragraph 9.

10.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10, and thus denies the allegations set forth in Paragraph 10.

11.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, and thus denies the allegations set forth in Paragraph 11.

12.     BioFuels states that the Letter Agreement and the Option Agreement speak for themselves.  BioFuels otherwise denies the allegations set forth in Paragraph 12.

13.     BioFuels states that the Letter Agreement and the Option Agreement speak for themselves.  Upon information and belief, BioFuels further answers that under the Letter Agreement and the Option Agreement, P&W agreed to provide certain engineering and construction management services, and cellulosic materials containing raw material from trees and woody shrubs, to the Cello project at Bay Minette, Alabama, but that the decision to utilize any such services and raw materials rested solely with Cello.  BioFuels denies the remaining allegations set forth in Paragraph 13.

14.     Upon information and belief, BioFuels states that one of the purposes of the Letter Agreement and Option Agreement is to provide P&W with the right to acquire a minority interest in Cello.  BioFuels denies the remaining allegations set forth in Paragraph 14.

- 3 -

15.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15, and thus denies the allegations set forth in Paragraph 15. BioFuels specifically denies the allegations set forth in the last sentence of Paragraph 15.

16.     BioFuels admits that the purpose of the MFC is to provide financing and operational services for all plants that are constructed by Cello that are based on the Technology. BioFuels further admits that it has paid to Cello a $12.5 million project fee in connection with the construction of the first project in Bay Minette, Alabama. BioFuels denies the remaining allegations set forth in Paragraph 16.

17.     BioFuels denies the allegations contained in the initial subparagraph of Paragraph 17, and denies that the examples provided in the numbered subparagraphs of Paragraph 17 constitute violations of the Letter Agreement, the Option Agreement, or the NDA.

18.     BioFuels states that the Option Agreement speaks for itself. BioFuels is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 18, and thus denies the allegations set forth in Paragraph 18.

19.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19, and thus denies the allegations set forth in Paragraph 19.

20.     BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20, and thus denies the allegations set forth in Paragraph 20.

- 4 -

21.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21, and thus denies the allegations set forth in Paragraph 21.

22.    BioFuels is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22, and thus denies the allegations set forth in Paragraph 22.

23.    BioFuels states that the provisions of Paragraph 6 of the Letter Agreement speak for themselves.  BioFuels states that in Paragraph 6 of the Letter Agreement P&W agreed to provide the services identified in the first sentence of Paragraph 23 of the Complaint, and that Cello retained sole discretion as to whether it would retain P&W to provide those services. BioFuels is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 23 of the Complaint, and thus denies the remaining allegations in Paragraph 23.

24.    BioFuels denies the allegations set forth in Paragraph 24.

Count One

25.    BioFuels incorporates by reference herein its responses contained in the proceeding paragraphs of this Answer.

26.    BioFuels denies the allegations set forth in Paragraph 26, and further denies that P&W is entitled to any of the relief set forth in the "Wherefore" clause included at the end of Paragraph 26.

US1DOCS 6420060v5

<u>Count Two</u>

27.     BioFuels incorporates by reference herein its responses contained in the proceeding paragraphs of this Answer.

28.     BioFuels admits that P&W and BioFuels disagree as to whether the MFC interferes with, conflicts with, or breaches the obligations of Cello under the Option Agreement. BioFuels denies that P&W is entitled to any of the relief that it seeks in the "Wherefore" clause included at the end of Paragraph 28.

<u>Count Three</u>

29.     BioFuels incorporates by reference herein its responses contained in the proceeding paragraphs of this Answer.

30.     BioFuels admits that a controversy exists between P&W and BioFuels as to whether the MFC interferes with, conflicts with, or breaches the obligations of Cello under the Option Agreement.  BioFuels denies that P&W is entitled to any of the relief that it seeks in the "Wherefore" clause included at the end of Paragraph 30.

<u>Second Defense</u>

The Complaint fails to state a claim upon which relief can be granted.

<u>Third Defense</u>

P&W's claims for equitable relief are barred by estoppel.

<u>Fourth Defense</u>

P&W's claims for equitable relief are barred by unclean hands.

US1DOCS 6420060v5

### Fifth Defense

Injunctive relief is not available for specific performance in Alabama on a personal services contract, including a contract to provide engineering services.

### Sixth Defense

BioFuels reserves the right to assert additional affirmative defenses as they are ascertained through the course of discovery.

### General Denial

BioFuels denies all allegations in the Complaint not specifically admitted above.

## COUNTERCLAIM

1.      This counterclaim seeks a declaratory judgment that plaintiff in counterclaim is not interfering with defendant in counterclaim's rights, if any, regarding the financing and operation of plants for the manufacture of synthetic fuels.

### Parties

2.      Defendant-Plaintiff in counterclaim BioFuels Operating Company, LLC ("BioFuels") is an Alabama limited liability corporation with a principal place of business in Menlo Park, California.

3.      Plaintiff-Defendant in counterclaim Parsons & Whittemore Enterprises Corporation ("P&W") is, upon information and belief, a Delaware corporation with a principal place of business in Rye Brook, New York.

### Background Facts

4.      Over the past 12 years, Dr. Jack Boykin, the principal of the Defendant company formerly known as Forest Energy Services, LLC and now known as Cello Energy, LLC (collectively, "Cello"), has developed proprietary technology – consisting of both chemical processes and mechanical designs – to produce synthetic fuels from various raw materials, including tires, plastics, agricultural residues and other cellulose-containing materials, for use in diesel engines, gasoline type internal combustion engines and jet turbine-type combustion

- 7 -

engines (the "Technology"). Dr. Boykin is a chemical engineer by profession, and has built and operated chemical manufacturing plants in the United States and abroad.

5.     The Technology has the potential to revolutionize the American economy by replacing traditional petroleum-based fuels with synthetic fuels manufactured from waste materials that currently are disposed in landfills, incinerated, or only partially recycled. If successful, the Technology could reduce the United States' dependence on foreign oil, improve the country's balance of payments, and contribute to improving the environment.

6.     Cello has developed plans for the construction of numerous manufacturing plants which would utilize the Technology to produce synthetic fuels (the "Plants"). Cello has estimated that the initial Plant, which will be located in Bay Minette, Alabama, will cost approximately $10.0 million to design and construct, and that an additional $2.5 million will be required to provide necessary working capital for the Plant.

7.     On or about April 19, 2007, Cello (while still known as Forest Energy Services, LLC ("FES")) executed a Letter of Understanding and Option Agreement with P&W, copies of which are attached as Exhibits A and B, respectively (collectively, the "Option"). The Option superseded all prior agreements involving Cello and P&W.

8.     Pursuant to the Option, P&W paid Cello $2.5 million, and received an option to later acquire one third of the stock of Cello upon the payment of an additional $10 million to Cello. P&W also agreed to provide engineering and construction services for, and furnish raw materials to, the initial Plant on a cost-plus basis. Finally, the Option afforded "minority shareholder" protection rights to P&W, including a prohibition on the sale of additional stock in Cello without the prior approval of P&W.

9.     The Option contemplated that Cello would seek the $10 million needed to construct the initial Plant, and the additional $2.5 million needed to operate the initial Plant, from sources other than P&W. However, the Option precluded Cello from giving common stock to third parties without the consent of P&W. The Option also precluded Cello from transferring, assigning or licensing the Technology to a third party without the consent of P&W.

10.    BioFuels and its affiliates actively support and participate in the financing, development and operation of alternative energy sources, including but not limited to biofuel and synthetic fuel manufacturing plants.

11.    Cello actively sought the additional funding required to construct the initial Plant from a variety of sources, including commercial banks and federal loan programs. Cello's efforts to secure the additional funding were not successful. P&W was aware of these efforts, and the fact that Cello would need outside funding for subsequent plants.

12.    In mid-2007, Cello discussed financing for the Plants with an affiliate of BioFuels. When proposed by Cello, P&W rejected BioFuels' involvement, notwithstanding the need for financing for the Plants and the significant resources that BioFuels was prepared to make available.

13.    Upon learning of P&W's rejection, Cello then negotiated an alternative type of funding arrangement with BioFuels which would enable Cello and/or its affiliates to obtain sufficient funding to proceed with construction and operation of its Plants without making BioFuels a stock participant in Cello.

14.    On or about September 12, 2007, Cello (still known then as FES) and BioFuels executed a Manufacturing and Financing Contract (the "MFC"). A copy of the MFC is attached as Exhibit C. The MFC provides, in relevant part that:

- BioFuels would provide $12.5 million in development fees to fund construction of the initial Plant, and an additional $12.5 million in development fees to fund the construction of two subsequent plants;

- the payments made by BioFuels would be non-recourse to Cello and its affiliates;

- Cello or its affiliates would own the Plants;

- Cello or its affiliates would handle the sale of all of the Plants' output, with assistance from BioFuels or its affiliates;

- BioFuels would operate and manage the Plants on behalf of Cello or its affiliates;

- 9 -

- after payment of certain fixed and other expenses, BioFuels would receive a portion of adjusted gross revenues generated from the operations of the Plants; and

- BioFuels would receive neither any equity interest in the Plants nor any ownership right to or interest in the Technology.

15.     The MFC provides that Cello shall make available to BioFuels the Technology that is necessary for BioFuels to operate and maintain the Plant.  The MFC specifically provides that the Technology shall at all times remain the sole property of Cello, and that neither BioFuels nor its affiliates will have any right or interest in the Technology.

16.     The MFC does not transfer, assign, or otherwise convey a license to the Technology to BioFuels.  BioFuels has not yet received any of the Technology, nor will it until after the Plant is constructed.  Once Cello discloses the Technology to BioFuels, BioFuels is prohibited from disclosing that information to its affiliates or a third party and cannot use the Technology for any purpose other than operating the Plants.

17.     The MFC does not grant BioFuels an equity interest in Cello.  Under the MFC, BioFuels does not receive any common stock in Cello or any seats on Cello's Board of Directors, nor is it entitled to share in the profits and losses of Cello.

18.     The MFC is a recognized type of operating and maintenance agreement used, upon information and belief, in the chemical manufacturing and hotel businesses, among others. It is an alternative financing arrangement to an investment in exchange for stock.  Under the MFC, BioFuels has to pay operating expenses out of the gross remaining revenue of the Plant, which means that BioFuels could incur losses in a given year while Cello makes a profit.  In light of BioFuels' obligations, and the resultant risk, under the MFC, the MFC provides a reasonable, non-equity return to BioFuels.

19.     The MFC provides that, as between Cello and BioFuels, Cello will construct the Bay Minette Plant and provide engineering and construction management services.  By its own terms, the MFC does not prohibit Cello from engaging P&W to provide engineering and construction management services for the Bay Minette Plant.

- 10 -

20.    The MFC requires that woody feedstock for the Bay Minette Plant be purchased from the Alabama River Pulp Company, a subsidiary of P&W, provided that the price charged is at market rate. As such, the MFC does not interfere with any feedstock purchase obligations that Cello may have to P&W under the Option.

21.    The MFC specifically provides that it is not intended to conflict with the rights of P&W under the Option Agreement. The MFC further provides:

> In the event that it is determined that there is such a conflict, then the [P&W] Option shall govern, and the parties to this [Manufacturing] Contract will renegotiate the term, provision, agreement or condition that is in conflict so as to achieve as nearly as possible the purpose and intent of this [Manufacturing] Contract.

22.    At the time of closing on the MFC, BioFuels paid Cello a $12.5 million project development fee. The Project would not have been built without the payment of this amount by BioFuels.

23.    Cello is using the project development fee to design, plan and construct its initial Plant in Bay Minette, Alabama. Cello is overseeing the construction process, and P&W has provided engineering and some construction management services. Furthermore, Cello has advised P&W that its would be entitled to receive all drawings, provide comments, have a permanent representative on-site, and attend all meetings.

24.    Cello also has estimated that this Plant will be built by May 2008, and that it will be fully operational by June 2008. Cello expects that the Bay Minette Plant will employ approximately 35 workers.

25.    On or about September 26, 2007, P&W, through its counsel, sent a letter to BioFuels threatening legal action and asserting that BioFuels has interfered with P&W's contractual relations with Cello. On or about October 9, 2007, BioFuels responded by letter denying these assertions. Copies of these letters are attached on Exhibits D and E, respectively.

26.    On or about October 9, 2007, BioFuels filed a declaratory judgment action against P&W in the United States District Court for the Southern District of New York (the "New York Action").

27.     On or about October 16, 2007, P&W filed this Action, raising many of the same issues as in the New York Action.  This Action, among other things, seeks injunctive relief and a declaration that the MFC interferes with P&W's rights pursuant to the Option.

28.     This Court, by Order filed January 25, 2008, denied P&W's request for injunctive relief.

29.     On February 8, 2008, BioFuels dismissed the New York Action without prejudice.

<u>Request for Declaratory Relief</u>

30.     BioFuels realleges and incorporates by reference as if fully set forth herein the preceding paragraphs of this counterclaim.

31.     The MFC does not interfere with the rights of P&W pursuant to the Option because, among other reasons, BioFuels has no ownership interest in Cello, the Plants, or the Technology.

32.     BioFuels is prepared to finance the construction of additional Plants to utilize the Technology.  However, BioFuels is concerned about proceeding with any further expenditure of funds with the P&W threats outstanding.

33.     In addition to the rights of BioFuels which are being jeopardized by P&W, there is a substantial public interest involved in this matter, as the successful development of synthetic fuels at the Plants has the potential to reduce significantly the country's reliance on imported oil.

34.     An actual controversy exists between BioFuels, on the one hand, and P&W, on the other hand, as to whether the MFC interferes with P&W's rights pursuant to the Option.

35.     BioFuels seeks a declaratory judgment as to the rights and obligations of the parties.  In particular, BioFuels seeks a declaration that BioFuels and the MFC are not interfering with P&W's rights, if any, pursuant to the Option.

WHEREFORE, BioFuels requests that the Court:

1.     Enter judgment in its favor.

US1DOCS 6420060v5

2.      Issue a declaratory judgment in favor of BioFuels, that BioFuels and the MFC are not interfering with P&W's rights pursuant to the Option, and that BioFuels and Cello may proceed under the MFC.

3.      Award costs and attorneys fees to BioFuels.

4.      Grant such other relief as the Court deems just and proper.


<u>Jury Demand</u>

BioFuels demands trial by struck jury on all issues pertaining to P&W's Complaint and this Answer and Counterclaim that are triable by jury as of right.


Respectfully submitted,

BIOFUELS OPERATING COMPANY, LLC,

By its attorneys,

/s/ Russel Myles
WIILIAM C. ROEDDER, JR. (ROEDW4089)
RUSSEL MYLES  (MYLEP5322)
ANNE LAURIE SMITH (SMIT2262)
McDowell Knight Roedder & Sledge, LLC
63 Royal Street South
Suite 900, Riverview Plaza
Mobile, Alabama 36602
(251) 432-5300

RICHARD A. JOHNSTON (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000

DAVID W. BOWKER (*pro hac vice*)
DAVID M. BURKOFF (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York  10022
(212) 230-8800

Dated: February 12, 2008

- 13 -

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2008, I have served a true and correct

copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:

| | |
|---|---|
| David Boyd, Esq.<br>Balch & Bingham<br>P. O. Box 78<br>Montgomery, AL 36101<br>#205-834-6500<br>Email: dboyd@balch.com<br><br>John N. Leach, Jr., Esq.<br>Helmsing, Leach, Herlong, Newman &<br>Rouse, P.C.<br>P.O. Box 2767<br>Mobile, AL 36652<br>#251-432-5521<br>Fax: #251-432-0633<br>Email:jnl@helmsinglaw.com | John Eric Getty, Esq.<br>Balch & Bingham<br>P.O. Box 306<br>Birmingham, AL 35201<br>#205-226-8789<br>Email: egetty@balch.com<br><br>W. Joseph McCorkle, Jr., Esq.<br>Balch & Bingham<br>P. O. Box 78<br>Montgomery, AL 36101<br>#205-834-6500<br>Fax: #334-269-3115<br>Email: jmccorkl@balch.com |
| Forrest S. Latta, Esq.<br>Michael David Strasavich, Esq.<br>Bowron, Latta & Wasden, P.C.<br>Post Office Box 16046<br>Mobile, AL 36616-6046<br>#251.344.5151<br>Fax: #251.344.9696<br>fsl@bowronlatta.com<br>mds@bowronlatta.com | Philip Dale Segrest, Esq.<br>Philip D. Segrest, Jr., Esq.<br>The Segrest Law Firm<br>Post Office Box 780791<br>Tallassee, AL 36087-0791<br>#334.252.0036<br>Fax: #334.252.0037<br>dale.segrest@segrestlaw.com<br>philip.segrest@segrestlaw.com |

/s/ Russel Myles
Russel Myles

- 14 -