**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PARSONS & WHITTEMORE** ) <br> **ENTERPRISES CORPORATION,** ) <br> ) <br>    **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **CELLO ENERGY, LLC, <u>et</u> <u>al</u>.,** ) <br> ) <br>    **Defendants.** ) | **CIVIL ACTION NO. 07-0743-CG-B** |

## ORDER

This matter comes before the court on Parsons & Whittemore Enterprises Corporation's ("P&W") Reinstated Motion for Conference Pursuant to February 19, 2008 Order. (Doc. 75). Cello Energy, LLC and Jack W. Boykin responded to the motion (Doc. 79), P&W replied with leave of court (Doc. 86), P&W then supplemented its motion "based on recent developments" (Doc. 98), and Cello Energy, LLC and Jack W. Boykin responded (Doc. 99).

As this court set forth in more detail in an order dated January 25, 2008 (Doc. 60), the plaintiff in this case, P&W, seeks injunctive and declaratory relief. In broad strokes, P&W wants to enforce agreements it and one of its subsidiaries entered into with a company that currently bears the name, "Cello Energy, LLC." A member of Cello Energy, LLC signed most of the agreements as well. This order will refer to Cello Energy, LLC, its members, and the individuals affiliated with that company collectively as "Cello."

The agreements involve a business endeavor to produce fuel from cellulosic material. Specifically, the parties signed two nondisclosure agreements (Docs. 26-2 and 26-3), an option agreement (Doc. 26-4), and a letter agreement (Doc. 26-5).

In addition to providing the Option Holder, which is defined as P&W, "a company

owned or controlled by it, or a company the majority of which is owned by or controlled by George F. Landegger," with an option to purchase an interest in Cello Energy, LLC, the option agreement provides:

> Simultaneously with the payment of the $2.5 million price for this Option, the Company [Cello Energy, LLC] will provide total and full transparent disclosure of the entire FES Technology as defined hereafter to the Option Holder and/or its affiliates pursuant to the nondisclosure agreement entered into by the Company on February 27, 2007.  Full disclosure includes, but is not limited to, detailed drawings and process descriptions, research reports and notes, trial and test results, pilot plant operating data and economic data, economic analysis, raw material and refined product market studies, third party product evaluations, and off take agreements.

(Doc. 26-4, p. 2).  The option agreement defines "FES Technology" as, "all the intellectual property relating to the technology for the production of fuels from various raw materials, including, but not limited to, tires, plastics, agricultural residues, cellulose-containing materials[.]" (Doc. 26-4, pp. 2-3).

The option agreement also provides that the Option Holder, "shall immediately have all the rights of the Minority Shareholder (the 'Minority Shareholder') as used in this paragraph. Specifically . . . the Minority Shareholder shall be entitled to select four (4) of the twelve (12) members of the Board of Directors of the Company [Cello Energy, LLC][,]" (Doc. 26-4, p. 4), although it does not provide the Option Holder with "any voting rights as a shareholder of the Company prior to the exercise" of the option to purchase a one-third stake in Cello Energy, LLC (Doc. 26-4, p. 3).

The letter agreement provides:

> Simultaneously with payment of the $2.5 million consideration for the Option Agreement, [Cello Energy, LLC] will provide total and full transparent disclosure of the entire FES Technology to [P&W] pursuant to the nondisclosure agreement entered into by [Cello Energy, LLC] on February 27, 2007.  Full disclosure

> includes, but is not limited to, detailed drawings and process descriptions, research reports and notes, trial and test results, pilot plant operating data and economic data, economic analysis, raw material and refined product market studies, third party product evaluations, and off take agreements.

(Doc. 26-5, p. 3).  The letter agreement also provides:

> [P&W] agrees to provide engineering and construction services for the FES project at Bay Minette, Alabama on a cost-plus basis. . . . [P&W] agrees (1) to provide construction management for the entire FES project at Bay Minette, Alabama (2) to provide engineering management and detailed engineering for the FES project up to the input of the reactors, and (3) to provide engineering management (with detailed engineering to be performed by others) for the reactor and subsequent portions of the FES Project. [Cello Energy, LLC] Management will have final authority on all decisions regarding the project.

(Doc. 26-5, p. 3).  Finally, the letter agreement says that P&W "personnel will be available to review with [Cello Energy, LLC] management potential sites for building additional production facilities in the U.S. and worldwide based on the Bay Minette, Alabama model."  (Doc. 26-5, p. 4).

The relationship between P&W and Cello deteriorated when P&W learned that Cello entered into a Manufacturing and Finance Contract ("MFC") with BioFuels Operating Company, LLC ("BioFuels"), which is a subsidiary of a another company, Khosla Ventures.  The MFC between Cello and BioFuels contains several provisions with which P&W takes issue.  Part of the breakdown between the parties involves Cello's refusal to allow P&W to supply engineering, construction, and construction management services at the first plant that is being built in furtherance of the cellulosic fuel production business venture in Bay Minette, Alabama (the "Bay Minette plant").  (Doc. 1, ¶ 23).

P&W moved for a preliminary injunction shortly after it filed this lawsuit, asking the court to (1) prohibit the defendants from performing under the MFC, (2) prohibit Cello from

3

spending or committing money it recevied from BioFuels pursuant to the MFC, (3) prohibit Cello from breaching the obligations set forth in its agreements with P&W, (4) prohibit BioFuels from interfering with P&W's rights under P&W's agreements with Cello, and (5) prohibit the defendants from acting pursuant to certain corporate documents that Cello recently executed. (Doc. 1, pp. 19-20; Doc. 9).

After a lengthy hearing, this court denied the motion for a preliminary injunction on the basis that P&W did not show it would suffer an irreparable injury while this lawsuit was pending. (Doc. 60, pp. 39-43). The court described three categories of potential injury, one of which was "injury flowing from the P&W's loss of the opportunity to construct the Bay Minette plant, which would allegedly hinder its ability to learn how the plants operate and allegedly decrease the chances that the Bay Minette plant will be adequately constructed[.]" (Doc. 60, p. 41). The court found that P&W did not demonstrate that it would suffer such an injury for two reasons. First, the evidence - particularly Jack Boykin's testimony during the preliminary injunction hearing - suggested that P&W would "have unfettered access to the construction process" and be able "to observe the construction in any way P&W felt was appropriate." (Doc. 60, p. 42). Second, there was insufficient evidence to support the conclusion that the Bay Minette plant would not be properly constructed if an entity other than P&W constructed it. (Doc. 60, p.42). In line with this second point, although Cello's management has final authority over decisions pertaining to construction of the Bay Minette plant, the court found that "[i]f P&W takes advantage of its opportunity to keep abreast of the construction status, there is no reason to believe that it will not be able to voice suggestions or concerns to Jack [Boykin] or to the construction company." (Doc. 60, p. 42).

Since the court denied the motion for a preliminary injunction, the parties have not been able to work out a mutually acceptable arrangement for keeping P&W abreast of, or involved in, the progress at the Bay Minette plant.  P&W filed a "Motion for Expedited Conference" on February 12, 2008.  (Doc. 63).  The motion sought a conference between court and counsel to address Cello's alleged refusal to honor obligations to disclose certain information to P&W.  P&W's motion asserted that the obligations arose from the contractual agreements between the parties, which Jack Boykin "reaffirmed emphatically" during the preliminary injunction hearing.  (Doc. 63, p. 2).  Cello responded to say that it did not think a conference was necessary but that it "would welcome the Court's involvement if the Court determines it would be helpful in establishing procedures for the plaintiff's observation of construction, without requiring the routine supervision of the Court."  (Doc. 67, p. 1, ¶ 1).  After further, spontaneous, briefing on the issue, this court held that a conference in chambers would be premature.  The court ordered the parties to meet, exchange the documents they could agree to exchange, and "[i]n the unfortunate event that the parties still need the court to hep them sort out this dispute," to reinstate the motion.  (Doc. 71, p. 3).

Unfortunately, the parties still are not able to agree about the proper extent of Cello's disclosure obligations to P&W.  P&W reinstated its motion for a conference on March 13, 2008.  (Doc. 75).  The court ordered Cello to respond to the reinstated motion.  (Doc. 76).  Cello did so.  Its response recognized that the parties dispute "the degree of the 'transparency' or disclosure obligations of Cello," (Doc. 79, p. 3) and outlined the disclosures that Cello had made to P&W.  P&W replied (Doc. 86) and then filed a supplement, advising the court that Cello does not plan to hold board meetings until this case is resolved (Doc. 98).  The supplement also asked the court

to appoint a "qualified special master to manage the Cello/P&W relationship pending trial." (Doc. 98, p. 2). Cello responded to say that it is offering P&W the transparency it seeks. (Doc. 99).

The motion for a conference is **GRANTED**. The parties are **ORDERED** to appear before the court on **Friday June 27, 2008 at 9:00 A.M..** P&W should be prepared to show what information, or categories of information, it takes the position it is entitled to receive, along with why it thinks it is entitled to receive such information. Cello should be prepared to show how it is providing P&W with the information it seeks and, to the extent that Cello is not providing P&W with the information it seeks, why Cello is not under an obligation to do so. The parties should also be prepared to make similar presentations with respect to any duty Cello has to hold board meetings.

The court expects to order the parties to file a joint proposed order after the conclusion of the conference, setting forth the parties' disclosure obligations on a going forward basis. The joint proposed order that the parties will file after the conclusion of the conference will likely include a section setting forth the disclosure and board meeting obligations about which the parties agree and, depending on the outcome of the conference, may include another section setting forth the obligations about which the parties do not agree.

**DONE and ORDERED** this 13th day of June, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE