Case 1:07-cv-00743-CG-B   Document 478-1   Filed 06/02/09   Page 1 of 18

ELECTRONICALLY FILED
6/2/2009 10:19 AM
CV-2005-000923.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | | |
|---|---|---|
| PRS II, L.L.C., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. CV-2005-923 |
| | * | |
| WHITE SANDS GROUP, L.L.C. and | * | |
| JEFF VALENTINE, | * | |
| | * | |
| Defendants. | * | |

| | |
|---|---|
| WHITE SANDS GROUP, LLC; and | * |
| CHRIS ROLISON, | * |
| | * |
| Counterclaim Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| LANGAN DEVELOPMENT COMPANY; | * |
| BAR PILOT LAND, LLC; PILOTS | * |
| POINTE DEVELOPMENT, LLC; | * |
| STEVE CANTOR; PETER STERLING; | * |
| MICHAEL ASFOUR; P&M BUILDERS, | * |
| LLC; PRS II, LLC; ET AL | * |
| | * |
| Counterclaim Defendants. | * |

## PRS II, L.L.C'S RENEWED MOTION FOR SUMMARY JUDGMENT

COME NOW PRS II, L.L.C. ("PRSII") by and through its attorneys of record, and files this Renewed Motion for Summary Judgment as to the remaining portion of Count III (wrongful interference with contractual relations) of the Counterclaim since there are no genuine issues of material fact and judgment as a matter of law is due to be granted.

In support of their motion, PRSII incorporates by reference the following exhibits and documents filed simultaneously herewith:

    1. Brief in Support of Renewed Motion for Summary Judgment;

1

**EXHIBIT A**

2. Notice of Filing in Support of Renewed Motion for Summary Judgment.

PRSII also incorporates by reference its briefs and evidentiary filings with this Court in support of its previous Motions for Summary Judgment.

PRSII respectfully requests that this Court enter summary judgment as to the remaining portion of Count III of White Sands' Counterclaim, to tax costs against White Sands, and to grant such other, further and different relief as this Court deems fair and just.

Respectfully submitted,

/s/ Jerome E. Speegle

JEROME E. SPEEGLE (SPE011)
jspeegle@ziemanspeegle.com
ANTHONY M. HOFFMAN (HOF007)
thoffman@ziemanspeegle.com
Attorneys for Counterclaim Defendant PRS II, LLC

Address of Counsel:
Zieman, Speegle, Jackson & Hoffman, L.L.C.
Post Office Box 11
Mobile, AL  36601
(251) 694-1700

## CERTIFICATE OF SERVICE

I do hereby certify that on September 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following listed persons:

Richard H. Gill, Esq.
George W. Walker, III, Esq.
Copeland, Franco, Screws, & Gill, P.A.
P. O. Box 347
Montgomery, AL  36101-0347

Julian B. Brackin, Jr., Esq.
Post Office Box 998
Foley, Alabama  36536

/s/ Jerome E. Speegle

ELECTRONICALLY FILED
10:19 AM
CV-2005-000923.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

IN THE CIRCUIT COURT OF BALDWIN COUNTY

| | | |
|---|---|---|
| PRS II, L.L.C., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. CV-2005-923 |
| | * | |
| WHITE SANDS GROUP, L.L.C. and | * | |
| JEFF VALENTINE, | * | |
| | * | |
| Defendants. | * | |

| | |
|---|---|
| WHITE SANDS GROUP, LLC; and | * |
| CHRIS ROLISON, | * |
| | * |
| Counterclaim Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| LANGAN DEVELOPMENT COMPANY; | * |
| BAR PILOT LAND, LLC; PILOTS | * |
| POINTE DEVELOPMENT, LLC; | * |
| STEVE CANTOR; PETER STERLING; | * |
| MICHAEL ASFOUR; P&M BUILDERS, | * |
| LLC; PRS II, LLC; ET AL | * |
| | * |
| Counterclaim Defendants. | * |

### BRIEF IN SUPPORT OF PRS II, L.L.C.'S
### RENEWED MOTION FOR SUMMARY JUDGMENT

COMES NOW Counterclaim Defendant PRS II, L.L.C. ("PRSII"), by and through its attorneys of record and submits this Brief in Support of its Renewed Motion for Summary Judgment, as follows:

### PROCEDURAL HISTORY

This case is before the Court after being remanded by the Alabama Supreme Court. This Court initially granted summary judgment on all counts in favor of the Plaintiffs and Counterclaim Defendants. On appeal, the Supreme Court affirmed all but

1

one portion of the Circuit Court's Order on Summary Judgment. In particular, the Supreme Court held that this Court was correct in finding that no contract existed by and between the Langan Entities and White Sands because the alleged agreement which White Sands relied upon, namely the Letter of May 17, 2005, was indefinite. The Supreme Court also held that White Sands' claims against PRSII for tortious interference with a contractual relationship were correctly dismissed because no contract existed between White Sands and the Langan Entities.

The only portion of the case that was remanded was White Sands' claim for tortious interference with a business relationship which, along with the claim for tortious interference with a contractual relationship, was contained in Count III of White Sands' Counterclaim. In doing so, the Supreme Court went through significant detail in explaining that two separate torts exist: (1) the tort of interference with contractual relations; and, (2) the tort of interference with business relations. *White Sands Group, LLC, et. al. v. PRSII, LLC, et. al.*, 10070050 at pp. 27-28 (Ala. April 18, 2008), *citing* with approval, Orrin K. Ames, III, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317 (2004-2005). The Supreme Court determined that although this Court correctly ruled in favor of PRSII on White Sands' claim for tortious interference with a contractual relation, because PRSII had not briefed or submitted evidence on the separate claim of tortious interference with a business relationship, that claim should not have been ruled upon based upon the information submitted by the parties. *White Sands Group, LLC, et. al. v. PRSII, LLC, et. al.*, 10070050 at pp. 30-31 (Ala. April 18, 2008).

2

In its Order, the Supreme Court did not rule on the merits of White Sands' claims, but instead noted that the Counterclaim Defendants (including PRSII) did not address the tort of interference with a business relationship. As a result, the burden never shifted to White Sands. PRSII now supplements its original motion for summary judgment to address the shortfall identified by the Supreme Court and to request that a judgment be entered in favor of PRSII on the only remaining claim against PRSII, namely tortious interference with a <u>business</u> relationship.

## FACTUAL BACKGROUND

This case relates to the purchase of 97+ acres on the Fort Morgan peninsula (the "Property") on March 1, 2005 by PRSII. PRSII filed a Complaint to Quiet Title related to the Property as a result of an affidavit filed by White Sands in the Probate Court of Baldwin County claiming that White Sands had previously purchased five lots (1+ acre) in a proposed subdivision – a subdivision that is unrecorded and never obtained final plat approval – from the previous owner. White Sands answered and counterclaimed that the Langan Defendants and PRSII breached a contract with White Sands to sell five lots in the unrecorded subdivision and that PRSII (and others) tortiously interfered with the contractual and business relationship that White Sands had with the Langans.

White Sands' claims are based on a letter dated May 17, 2004, which was drafted and signed by White Sands and also signed by Thomas J. Langan, on behalf of Langan Development (the letter is hereinafter referred to as the "May 17 Letter"). In fact, White Sands has admitted that "**the contract or business relation was the May 17 agreement between White Sands and the Langans.**" Appellate Brief of White Sands at p. 65.

3

The Supreme Court held that the May 17 Letter was indefinite and unenforceable because of many terms that were still left to be determined.

The May 17 Letter stated in relevant part:

\* \* \* \*

> This offer is contingent on amenities described and discussed previously. **They are inclusive but not limited to** a swimming pool, community entertainment area, community access to the bay front with a possible pier, neighborhood to be gated, **etc.**

\* \* \* \*

> The offer is also **contingent upon the successful subdivision of lots** and completion of roadways. It was also expressed that environmental, wetlands delineations, archeological, beach mouse, and all other issues have been addressed which will provide these lots to be build able thru the normal permitting process.

The May 17 Letter did not require any of the involved entities to actually go forward with the development of the subdivision.

Prior to the purchase by PRSII, PRSII was informed by the Langans of the existence of the May 17 Letter. PRSII was also informed that White Sands had previously been advised that the subdivision was not going to be pursued – thereby exercising the seller's contingency not to subdivide the property. After determining that the May 17 Letter was not binding and that the Langans did not want to pursue development of a subdivision, PRSII purchased the property.

## STANDARD OF REVIEW

Summary judgment is proper where, as here, there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. *Alabama Rule of Civil Procedure* 56(c). Once the moving party has made a *prima facie* showing that there is no genuine issue, as PRSII has made, <u>the non-moving party must produce</u>

4

substantial evidence of the existence of a material disputed fact to rebut this showing. *Henson v. Celtic Life Insurance Company*, 621 So.2d 1268 (Ala. 1993). Substantial evidence is defined as evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. *Henson, supra.* Applying the law to the undisputed facts in this case, PRSII is entitled to summary judgment on White Sands' claim of tortious interference with a business relationship. There is no substantial evidence of any material issue left for a jury to decide.

## ARGUMENT

In the present case, in order to sustain a claim for tortious interference with a business relation, the Plaintiff must establish by substantial evidence the following:

1. the existence of a business relation;
2. the defendant's knowledge of the business relation;
3. intentional interference with the business relation;
4. the absence of justification for the defendant's interference;
5. damage to the Plaintiff as a result of the interference; and,
6. fraud, force or coercion on the defendant's part.

*Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 227 (Ala. 1996); Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 353 (2004-2005), *citing Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp 2d 1268 (M.D. Ala. 2003).

A.      White Sands Had no "Business" Relationship with the Langan Entities

There was no "mature" business relationship between White Sands and the Langan Entities. White Sands admits that the only "relationship" it had with the Langan Entities was the May 17 Letter – a letter that was rife with indefiniteness. Brief of White Sands to Supreme Court at p. 65. Some tortious interference cases involve a contract while others involve only an ongoing business relationship. In this case, however, by White Sands' own admission, **the entire contractual and business relationship between the Langan Entities and White Sands is are one and the same – the May 17 Letter.**

The May 17 letter, as noted by the Alabama Supreme Court, contained indefinite terms and neither party actually agreed to do anything. Thus, the alleged business relationship would necessarily be indefinite. As the Supreme Court stated:

> Indefiniteness infects the [May 17 Letter] in at least two fundamental respects. The first uncertainty is the price ultimately to be paid for the five lots... The second uncertainty... is that no party involved in this transaction has, at any time, unequivocally committed – in writing or otherwise – to perform any of its essential terms.

*White SandsGroup, LLC, et. al. v. PRSII, LLC, et. al.*, 10070050 at pp. 20-21 (Ala. April 18, 2008). As a result, the only "relationship" between White Sands and the Langans was not really a business relationship. Neither party agreed to all of the essential terms would in the event that the proposed subdivision was ever developed (not price, not amenities, and not even time for completion).

White Sands cannot show that the Langan Entities would have developed the subdivision. In fact, the evidence is to the contrary. Due uncertainties related to permitting and costs, the Langan Enitites decided not to move forward with the

6

subdivision project. Thus, White Sands cannot show that "but for" the alleged interference of PRSII, that the Langan Entities would have developed the subdivision; and, without development of the subdivision, White Sands certainly cannot show that it would have been able to purchase the five lots. As such, there was no "mature" business "relationship" with which PRSII could interfere because the only relationship between White Sands and the Langan Entities was wholly encompassed in the non-binding, unenforceable and indefinite one page May 17 letter. *See, e.g., Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 456-57 (Ala. 2004)(discussing the fact that plaintiff did not have a sufficiently mature business relationship that would have resulted in a contract); *see also*, Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 344 (2004-2005)(discussing maturity of business relationships and the holding in *Tom's Foods, supra*). This is not a case where White Sands and the Langan Entities had done business on numerous projects over the course of several years. This was the first interaction between the Langan Entities and White Sands. The only relationship was the May 17 Letter that said that provided for the sale of lots only if the Langan Entities decided to develop a subdivision. However, in this case, the Langan Entities decided not to pursue a subdivision and communicated that fact to both PRSII and White Sands.

    B. PRSII did Not Interfere with any "Business" Relationship of White Sands.

Even if, *arguendo*, this Court found that a mature business relationship existed between White Sands and the Langan Entities, PRSII did not interfere with that relationship. White Sands asserts that PRSII interfered with its business relationship by inducing the Langan Entities to sell PRSII the entire 97+, as opposed the Langan Entities

7

developing the subdivision and then selling five lots to White Sands for an undetermined price. White Sands asserts that this interference consisted of PRSII's offer to purchase the entirety of the 97+ acres of property (including the five unrecorded lots) for a larger amount of money than the amount PRSII was prepared to pay for the acreage less the five lots. White Sands argues that this offer to purchase the entire 97+ acres induced the Langan Entities to decide not to develop the subdivision – and that such inducement constitutes tortious interference with a prospective business relationship.

White Sands' argument fails because the Langan Entities had reserved the right not to move forward with the subdivision in the May 17 Letter. The Supreme Court has held that the May 17 Letter gave the Langans the "unbridled right to determine the nature of [their] performance." *White Sands Group, LLC, et. al. v. PRSII, LLC, et. al.*, 10070050 at 22 (Ala. April 18, 2008), *quoting* 1 Richard A. Lord, Williston on Contracts, § 4:21, at 647-48.

In *ERA Commander Realty, Inc.. v. Harrigan*, 514 So.2d 1329 (Ala. 1987), the Alabama Supreme Court was faced with a case that has striking similarities to the case at bar. ERA had a written contract with Harrigan to exclusively list and sell property owned by Harrigan. However, the contract stated that a commission would only be paid if the property was sold to someone who was presented for sale directly or indirectly by ERA. Harrigan ultimately sold the property to Frank Caron and did not pay a commission to ERA; instead a commission was paid to Caron's realtors. Caron's realtors admitted that they knew of ERA's listing on the property (via signs, the MLS listing and personal discussions with ERA). However, Harrigan informed Caron and his realtors that he reserved the right to sell the property. Subsequently, Caron's realtors read the agreement

8

Harrigan had entered into with ERA and concluded that the listing allowed Harrigan to sell the property without commission to ERA if the buyer was not introduced by ERA. Caron submitted an affidavit that confirmed that he was not introduced to the property by ERA either directly or indirectly. ERA ultimately sued Caron and his realtors for tortious interference with contractual or business relations. *ERA Commander Realty, Inc.. v. Harrigan*, 514 So.2d 1329, 1330 (Ala. 1987). The trial court granted summary judgment in favor of the defendants and the Supreme Court affirmed. In doing so, the Supreme Court noted that it "follows from the finding that Commander had no exclusive right to sell the property" that the claim for intentional interference must also fail. *Id.* at 1336.

In the present case, the Langan Entities and White Sands had signed the May 17 letter along with White Sands. The Langan Entities represented to PRSII that it had the right to decide whether to go forward with the construction of the subdivision, or to decide to sell the property as a whole.[1] The Langan Entities also represented to PRSII that they had confirmed to White Sands that the Langan Entities had decided not move forward with the subdivision of the property. This right is analogous to the seller's right to independently sell the property in *ERA Commander*. And, like the realtors in *ERA Commander*, after being told of the rights reserved by the sellers, PRSII reviewed the May 17 Letter and reached the same conclusion. And, like the parties in *ERA Commander*, the parties in the present case moved forward with a different transaction. Thus, like the buyer and realtors in *ERA Commander, supra*, it "follows from the finding that" the Langan Entities had a right to decide not to move forward with development of

---

[1] The Alabama Supreme Court has confirmed the Langans' position that they did have such an "unbridled right." *White Sands Group, LLC, et. al. v. PRSII, LLC, et. al.*, 10070050 at 22 (Ala. April 18, 2008).

9

the subdivision (and therefore not sell five lots to White Sands), that the claim against PRSII must also fail.

### C. PRSII Did Not Engage in Fraud, Force or Coercion.

Even if this Court finds that PRSII interfered with a business relationship, it did not do so wrongfully. Alabama law does not protect against all interference in commercial settings. Instead, it "is the right to do business in a fair setting that is protected." *Utah Foam Prods., Inc., v. Polytec, Inc.*, 584 So.2d 1345, 1353 (Ala. 1991). Some types of interference are permissible, especially in cases where competitors are pursuing their own interests – and not involving "wrongful means." *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 58 (Ala. 2004). The Supreme Court relied upon a previous decision from the United States Court of Appeals for the Seventh Circuit in defining the "wrongful means" that was "required to establish tortious interference with existing at will contracts or **to establish tortious interference with prospective contracts.**" *Id.* The Seventh Circuit opinion, applying Indiana law, stated:

> Competitors and their allies are not necessarily gentleman – or even scholars. Competition may be rough and tumble and even – within reasonable bounds – involve economic factors extraneous to the main competition itself. We do not believe a searching analysis only of motive is in most instances enough to send these cases to the jury. There must still under the Indiana cases be something "illegal" about the means employed.

*Tom's Foods, supra* at 458, *quoting, Soap Co. v. Ecolab, Inc.*, 646 So.2d 1366, 1370, (quoting with approval *Great Escape, Inc. v. Union City Body Co.*, 791 F. 2d 532, 543 (7th Cir. 1986)). In a case of interference with a business relationship, a Plaintiff must show substantial evidence of fraud, force, or coercion on the defendant's part.[2] *Barber v.*

---

[2] The types of acts or omissions that are generally viewed by courts as being impermissible acts of interference with business relations are things such as: physical violence, impeding deliveries, defamatory

10

*Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 227 (Ala. 1996); Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 353 (2004-2005), *citing Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp 2d 1268 (M.D. Ala. 2003). And, where a plaintiff fails to present substantial evidence as to an essential element of the Plaintiff's claim for intentional interference, summary judgment may be granted. *Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 227 (Ala. 1996).

In the present case, White Sands has not pled fraud.[3] Additionally, White Sands has not even mentioned any alleged act of force or coercion on the part of PRSII as it relates to the Langan Entities decision not to move forward with the development of a subdivision. PRSII engaged in no "illegal" conduct. The conduct that White Sands alleges was wrongful was PRSII's purchase of the entire 97+ acres. The Plaintiffs have failed to present any evidence, much less substantial evidence that PRSII engaged in fraud, force or coercion.

In the present case, the Langan Entities, through their representative, testified that the companies decided not to move forward with the development of the subdivision independent of any fraud, force or coercion. Affidavit of Thomas Langan. Instead, the reason that the Langan Entities decided not to pursue the subdivision was because they decided that they could make more money if they sold the entire 97+ acres as a whole instead of developing the property themselves.

---

communications, deceptive trade practices, product disparagement, unfounded litigation, misuse of confidential information, unethical conduct, predatory pricing, monopolization and threats. Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 353 (2004-2005).

[3] The Alabama Rules of Civil Procedure require that allegations of fraud must be pled with particularity. Rule 9(b), Ala. R. Civ. Pro. White Sands has not pled fraud, or even referenced fraud in its counterclaim complaint.

11

PRSII's testimony is likewise clear that it did not engage in any fraud, force or coercion. Affidavit of Peter Morris. Instead, PRSII decided that the entire 97+ acre parcel was more suitable to the development that they anticipated and therefore made an offer on February 25, 2005, to purchase the property in its entirety. As such, there is no evidence that fraud, force or coercion was used by PRSII to induce the Langan Entities to decide not to develop the subdivision, much less substantial evidence of the same. *See* Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 354 (2004-2005) at n. 162 ("When the only witnesses who might have been influenced by the alleged interference testify that it had no effect upon their decision whether to enter into a business relationship with the plaintiff, there has been no showing of unlawful interference." *Mr. G's Turtle Mountain Lodge, Inc. v. Rowland Township*, 651 N.W.2d 625, 633 (N.D. 2002)). Like the record in *Tom's Foods*, the record in the present case indicates that the Langan Entities **"freely elected to do business with"** PRSII. As such, there can be no tortious interference. *Tom's Foods, supra* at 459 (emphasis added.)

At best, White Sands argues that PRSII's offer of additional monies was the inducement that ultimately led the Langan Entities to decide not to move forward with the development of the subdivision. However, there is nothing fraudulent, coercive or forceful in one company's decision to purchase an entire parcel of real estate rather than a smaller portion not nearly as conducive to the plans of the purchaser. If that were the case, this Court would be "flooded" with cases of intentional interference with business relationship cases. And significantly, there is no evidence that the offer to purchase the

12

property in its entirety and the corresponding increase in the offer by PRSII was accompanied by any force or coercion. In fact, the evidence is to the contrary.

D.   Any Actions by PRSII were Justified under Alabama Law.

White Sands' claim for tortious interference with a prospective business relationship also fails because PRSII's actions were justified under Alabama law. The purchase of the property in its entirety by PRSII advanced PRSII's interests as a developer of high end vacation housing. The Supreme Court in Alabama has held that *bona fide* business competition is a justification for intentional interference with a competitor's business even if the end result ruins a rival. Ames, Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort, 35 Cumb. L. Rev. 317, 364 (2004-2005) *citing Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So.2d 238, 247 (Ala. 1992). In *Tom's Foods, supra*, the Supreme Court stated that that was required of a competitor to prove justification is:

> (1) that the [defendant] engages in actions designed to further, at least in part, his own interests; (2) that those actions create no unlawful restraint of trade; and, (3) that those actions do not involve wrongful means.

*Tom's Foods, supra* at 459.

It is undisputed that PRSII's actions furthered its own interests. Likewise, it cannot be argued that PRSII's actions created an unlawful restraint of trade. Finally, the actions of PRSII did not involve "wrongful" means, which as the Supreme Court has indicated are actions involving fraud, force or coercion. Instead, the actions taken by PRSII in offering to purchase all 97+ acres from the Langans (after the Langans indicated that they had advised White Sands that they were not going forward with the development of the subdivision and where there was no binding agreement between the

parties), PRSII was simply advancing its own economic interests. PRSII's interests were to develop condominiums on the property, and, the entire parcel of land fit more neatly into what PRSII was attempting to develop. "There is certainly nothing wrong with a defendant acting in such a way as to advance its own economic interest and courts have recognized that right." Ames, <u>Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort</u>, 35 Cumb. L. Rev. 317, 366 (2004-2005)(citations omitted). And, as noted by the Supreme Court, no contract existed by and between White Sands and the Langans. As such, "courts are much more lenient and generally will condone a greater range of activities as justifiable when there is simply an expectancy and not a contract." Ames, <u>Tortious Interference with Business Relationships: The Changing Contours of This Commercial Tort</u>, 35 Cumb. L. Rev. 317, 334 (2004-2005).

    E.    <u>There is No Substantial Evidence that White Sands Suffered Damage.</u>

There is no substantial evidence that White Sands sustained any damage as a proximate result of the alleged interference by White Sands. As the Supreme Court noted, the May 17 Letter upon which White Sands relies did not contain any definite price as to the cost of purchasing the lots. Likewise, the May 17 Letter did not put a time limit on the development of the subdivision; in fact, it did not even require the Langan Entities to proceed with development of the subdivision. Ultimately, the Alabama Supreme Court ruled that the May 17 Letter was indefinite and unenforceable.

The evidence is that the Langan Entities decided not to move forward with the subdivision independent of any actions of PRSII. The Langan Enities were concerned with uncertainties related to cost and permitting. The Langans would have had to finance

the development project themselves, and because there was no requirement to move forward, they decided not to incur such costs. Furthermore, even if the Langans decided to bear the financial costs of developing the subdivision, it is unknown even under the May 17 Letter, when the subdivision would have been completed, and what White Sands would have ultimately had to pay to the Langan Entities. As such, White Sands would have to heap speculation upon speculation to compute a damage: (1) speculate that the Langans would have decided to actually develop the subdivision; <u>and if so</u>, (2) speculate that the Langans would have obtained financing and would see the subdivision through to completion; <u>and if so</u>, (3) speculate as to when the completion of the subdivision would have occurred; <u>and if so</u>, (4) speculate what they ultimately would have had to pay the Langan Entities for the rights to the five lots it claimed it was entitled to purchase; and (5) speculate on market conditions and buyer availability at the unknown date when the properties would be ready to be sold; and (7) speculate on which amenities would be built and the value of those amenities at the same time.

## CONCLUSION

White Sands' claim for intentional interference with a business relationship against PRSII is due to be dismissed. White Sands was without a mature business relationship with the Langans. Further, PRSII did not interfere with any alleged relationship. PRSII engaged in no fraudulent, coercive or forceful conduct in its dealings with the Langan Entities. Finally, White Sands' suffered no damages – and any alleged damages are too speculative to award.

For the foregoing reasons, PRSII respectfully requests that this Court enter summary judgment as to the remaining portion of Count III of the Counterclaim, to tax

costs against White Sands, and to grant such other, further and different relief as this Court deems fair and just.

Respectfully submitted,

_____
JEROME E. SPEEGLE (SPE011)
jspeegle@ziemanspeegle.com
ANTHONY M. HOFFMAN (HOF007)
thoffman@ziemanspeegle.com
Attorneys for Plaintiffs-Counterclaim Defendants

Address of Counsel:
Zieman, Speegle, Jackson & Hoffman, L.L.C.
Post Office Box 11
Mobile, AL 36601
(251) 694-1700

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 24th day of September, 2008, served a true and correct copy of the foregoing on counsel listed below by placing same in the United States mail, properly addressed and first class postage prepaid:

Richard H. Gill, Esq.
George W. Walker, III, Esq.
Copeland, Franco, Screws, & Gill, P.A.
P. O. Box 347
Montgomery, AL 36101-0347

Julian B. Brackin, Jr., Esq.
Post Office Box 998
Foley, Alabama 36536

_____

16