# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PARSONS & WHITTEMORE ENTERPRISES CORPORATION,** ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CIVIL ACTION NO. 07-00743-CG-B |
| **CELLO ENERGY, LLC, et al.,** ) ) | |
| Defendants, ) ) | |

## ORDER

On October 16, 2007, Parsons and Whittemore Enterprises Corporation ("P&W") brought a lawsuit, in part, against Cello Energy, LLC ("Cello"), Boykin Trust, LLC ("Boykin Trust"), Jack W. Boykin ("Jack Boykin"), and Allen W. Boykin ("Allen")(collectively the "Boykin Defendants"). (Doc. 1). In February 2007, Jack and Allen, in hopes of having P&W invest in Cello, told P&W's George Landegger and other representatives that they had made commercial quantities of biofuels that met ASTM standards from cellulosic materials at their semi-works plant in Pritchard, Alabama. Cello, thereafter, entered into a nondisclosure agreement with P&W ("NDA"), in which Cello agreed "not to disclose to third parties the Process Information or any other [Cello] Property Information relating to the technical process for creating the Synthetic Fuels without a written modification of this Agreement signed by an authorized representative of each party hereto." (Doc. 26-3, p. 4). P&W ultimately paid $2.5 million for an option to invest another $10 million in Cello, and the exclusive right to participate with the Boykin Defendants as a one-third owner of Cello in the commercial development of the

1

above technology and other rights as provided in the agreements between the parties. After receiving the $2.5 million payment, the Boykin Defendants entered into an agreement with BioFuels Operating Company, LLC ("BioFuels"), which was allegedly a violation of Cello's obligation in the NDA. (Doc. 158, p. 1). P&W also maintained that during discovery it learned that the Boykin Defendants, despite their assurances to the contrary, had not made fuel from cellulosic materials in commercial quantities at the semi-works plant and that the fuel that they claimed to have made subsequently in a plant constructed by Cello was in essence fossil-based diesel fuel that they had purchased.

On June 29, 2009, a jury returned a verdict in favor of P&W and against the Boykin Defendants for a total of $10.4 million. First, the jury found from a preponderance of the evidence that P&W proved its breach of the NDA against Cello and Boykin Trust and awarded P&W $2,827,123.00. Second, the jury found from a preponderance of the evidence that there was a business relationship between P&W and the Boykin Defendants and that Biofuels and its related parties knew of that business relationship at the time of the alleged interference. Third, the jury found from a preponderance of the evidence that P&W proved its fraud claim against Cello, Boykin Trust, Jack Boykin, and Allen Boykin and awarded P&W $104,437.50. Fourth, the jury found by clear and convincing evidence that all four defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to this claim and awarded punitive damages of $7.5 million. This matter comes before the court on the Boykin Defendants' motion for a reduction of the punitive damages award (Doc. 570), P&W's response (Doc. 579), and the Boykin Defendants' reply (Doc. 581). For the reasons stated below, the Boykin Defendants' motion for a reduction of the punitive damages award is due to be DENIED.

2

The Boykin Defendants first argue that the punitive damages award "must be vacated or reduced because it violates Alabama law." (Doc. 570, p. 5). The Boykin Defendants maintain that "punitive damages cannot be awarded as a matter of law under Ala. Code § 6-11-20 and judgment as a matter of law should be entered in favor of the Boykin Defendants on the punitive damages claim asserted by P&W." (Id., p. 6). According to Alabama Code § 6-11-20, "[p]unitive damages may not be awarded in any civil action…. other than a tort action where it is proven by clear and convincing evidence that the defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20(a). The jury was correctly instructed on the applicable law and heard sufficient evidence on which to base the award of punitive damages under Alabama law. Furthermore, this court finds that the jury in this case was properly instructed on the imposition of punitive damages and that they answered a specific interrogatory which found by clear and convincing evidence that all four defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to P&W. This court does not agree that P&W failed to adduce sufficient evidence supporting punitive damages, thus this court is not persuaded by the Boykin Defendants that the jury factual determination should be disturbed. Accordingly, the Boykin Defendants are not entitled to judgment as a matter of law in the defendants' favor on P&W's claims for punitive damages.

Alternatively, the Boykin Defendants argue that the punitive damages award "exceeds the applicable state statutory caps on such damages." (Doc. 570, p. 6). Alabama Code § 6-11-21 provides that "in all civil actions where an entitlement to punitive damages shall have been established under applicable laws, no award of punitive damages shall exceed three times the compensatory damages of the party claiming punitive damages or five hundred thousand dollars

($500,000), whichever is greater." The Boykin Defendants maintain that since the jury awarded $104,437.50 in compensatory damages for fraud, then P&W is entitled only to the $500,000 cap. (Doc. 570, p. 7). This court disagrees. "[T]he starting point in any case involving the meaning of a statute [] is the language of the statute itself." Group Life and Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 210, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). While it is true that Alabama Code § 6-11-20 only allows a plaintiff to recover punitive damages in a tort action, the amount of such damages is not so limited by Alabama Code § 6-11-21. This section states that the punitive damages shall not exceed three times the compensatory damages "of the party claiming punitive damages." As such, this court looks to the total amount of compensatory damages of P&W to determine if the statutory cap applies. P&W was awarded by the jury a total of $7.5 million in punitive damages, an amount which is less than three times the $2,931,560.50 award of compensatory damages. Therefore, the statutory cap under Alabama Code § 6-11-21 does not apply. Accordingly, the motion is due to be denied to the extent it is predicated on the connection that the punitive damage award is excessive under Alabama law.[1]

---

[1] The Boykin Defendants assert that additional factors "counsel against a large punitive damage award", specifically that upholding a punitive damage award will likely "destroy" Jack and Allen Boykin "financially" and that "there is no evidence that any of the Boykin Defendants are going to profit from the alleged fraud in any way." (Doc. 570, pp. 7-8). This court is not persuaded. First, the evidence at trial established that the Boykin Defendants have received millions of dollars in the two years preceding the trial, and besides making blank assertions that Jack and Allen would be destroyed financially, the Boykin Defendants have provided no specific evidence as to their net worth or why they would be unable to pay the amount of damages. Second, the Boykin Defendants arguably will profit from the fraud since "Jack Boykin… continues to believe that the Technology at issue works and will succeed at a commercial scale" (Doc. 570, p. 15), and if successful, the Boykin Defendants would no doubt have profited from the initial investment and assistance of P&W which helped them launch the operation. Having evaluated the reasonableness of the award in this case by evaluating these factors, this court is satisfied that the award is not unreasonable or excessive.

Second, the Boykin Defendants argue that "[i]n addition to its violation of Alabama law, the jury's punitive damage award violates federal law." (Doc. 570, p. 9). "[I]n our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes." State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585, 600 (2003)(internal citation omitted). Whereas "[c]ompensatory damages are intended to redress the concrete loss that a plaintiff has suffered by reason of a defendant's wrongful conduct… punitive damages serve a broader function; they are aimed at deterrence and retribution." Id.(internal citation omitted). For this reason, there are procedural and substantive constitutional limitations on the imposition of punitive damages; namely the "Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." Id. at 416; see also BMW of N. Am. Inc. v. Gore, 517 U.S. 559, 569, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809, 822 (1996)("Only when an award can fairly be categorized as 'grossly excessive' in relation to [the state's] interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment.").

In reviewing a punitive damages award to ensure that it is based upon an "application of law rather than a decisionmaker's caprice," the United States Supreme Court instructs this court to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. State Farm, 538 U.S. at 418.

The Supreme Court has described the first guidepost – the degree of reprehensibility of the defendant's conduct – to be the "'most important indicium of the reasonableness of a

punitive damages award.'" Id. at 419 (quoting Gore, 517 U.S. at 575). In State Farm, the Supreme Court explained:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.
>
> Id.(citations omitted).

Unmistakably, some types of conduct are more reprehensible than others and therefore more deserving of a substantial punitive damages award. Gore, 517 U.S. at 575. For example, negligent conduct is less reprehensible than intentional misconduct, and infliction of economic harm is less reprehensible than infliction of physical harm. Id. at 576. Admittedly, the harm inflicted in this case was economic rather than physical, but a pattern of misconduct is more reprehensible than individual acts of wrongdoing. Id. at 576-577. The evidence before the jury established a pattern of intentional misconduct on the part of the Boykin Defendants leading to repeated damage to P&W. This misconduct included making one or more false statements or promises including that the defendants had previously produced one or two million gallons of fuel using the Technology with feedstock that included cellulosic materials; that they possessed test results documenting the fuel had met ASTM standards; that they had properly filed patent applications protecting the Technology; that they had ability to fund the balance necessary for financing the construction costs and working capital needs of the Bay Minette plant beyond the $2.5 million invested by P&W; that they would use the $2.5 million only for construction of the

6

Bay Minette plant; that Cello would provide full and transparent disclosure of the Technology; and that they would engage P&W to provide services and expertise during design and construction of the plant. Additionally, there is no question that the harm to P&W was the result of intentional malice, trickery, or deceit by the Boykin Defendants. After considering all of the relevant factors, this court finds that the Boykin Defendants' culpability is so reprehensible as to warrant the imposition of further sanctions, after having paid compensatory damages, to achieve just punishment and adequate deterrence.[2]

Turning to the second guidepost, the Supreme Court has been reluctant to "identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." State Farm, 538 U.S. at 424. Although declining to impose a bright-line ratio which a punitive damages award cannot exceed, the Court has recognized that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Id. Citing a long history of providing sanctions of double, treble, or quadruple damages to deter and punish, the Court in State Farm stated:

> While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 [as in Gore], or in this case, of 145 to 1.

---

[2] The Boykin Defendants also argue that this court "must give consideration to the lack of reprehensibility of Allen Boykin's conduct in this case" and allocate less of the award of punitive damages against Allen because of his alleged minimal involvement. (Doc. 570, p. 16). This court is not persuaded by this argument. The jury specifically indicated in its verdict that it found by clear and convincing evidence that all four defendants, including Allen, consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to this claim and awarded punitive damages of $7.5 million against all four defendants. There was sufficient evidence presented at trial of Allen's involvement, and this court is not persuaded by the Boykin Defendants' arguments that the jury factual determination should be disturbed.

> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. The converse is also true, however. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

Id. at 425-426 (quotation marks and citations omitted).

"In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." Id. at 426. In this court's view, the punitive damage award is rationally based on the evidence presented to the jury at trial and intended to punish the Boykin Defendants in a reasonable and proportionate way. This case involves a single digit multiplier, as the ratio of punitive damages to compensatory damages is 2.6:1. The court finds that, in light of the evidence, the ratio of punitive damages to compensatory damages comports with due process.

Under the third guidepost, this court analyzes the disparity between punitive damages awarded by the jury in this case and the civil penalties authorized or imposed in comparable cases. "Whether a defendant had constitutionally adequate notice that his conduct might result in a particular damage award depends in large part upon the available civil and criminal penalties the state provides for such conduct." See e.g., Johansen v. Combustion Eng'g Inc., 170 F.3d 1320, 1337 (11th Cir. 1999). There may be a lack of adequate notice to the defendant "if the difference between the civil or criminal penalties that were or could have been imposed and the punitive damage award is too great." Id. Of course, this court is mindful that this third guidepost is "accorded less weight in the reasonableness analysis than the first two guideposts." Kenp v. Am. Tel. & Tel. Co., 393 F.3d 1354, 1364 (11th Cir. 2004).

The Boykin Defendants first reference two Alabama statutes relating to the selling of petroleum goods with the intent to deceive a purchaser as to the product's identity, quality, brand or character, violation of which could lead to a fine of not more than $6,000 per instance. (Doc. 579, pp. 20-21)(citing Ala. Code § 8-17-130 & § 8-17-93). This court is not persuaded by this comparison. The Boykin Defendants did not sell petroleum goods to P&W, but rather, they fraudulently misrepresented that they could make a specific type of petroleum with non-existent Technology in hopes of inducing P&W to engage in a multi-million dollar transaction.

Alternatively, the Boykin Defendants cite the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, et seq., which is "designed to protect the interest of [the] legitimate businessperson," and specifically reference Alabama Code § 8-19-5 which "makes it illegal to engage in a variety of fraudulent or deceitful activities during the sale of a good or service." (Doc. 570, p. 21). The defendants maintain that the statute provides for a punishment of $2,000 per instance. (Id., p. 22). However, these statutes also allow a private right of action and allow for a recovery of "any actual damages sustained by such consumer or person" or "[u]p to three times any actual damages, in the court's discretion" and also "the costs of the action… with a reasonable attorney's fee." Ala. Code § 8-19-10. While the Boykin Defendants cite this statute to the contrary, this court finds that this particular civil penalty supports a finding that the jury's award of $7.5 million in punitive damages does not offend due process. Pursuant to the above statute and general Alabama law, this court finds that the Boykin Defendants had adequate notice that their conduct would result in a substantial damage award.

In sum, this court finds that the facts of this case clearly support a very significant award of punitive damages. The court cannot find on the record before it that the punitive damages award in this case is unconstitutionally excessive. The court does not agree with the defendants'

contention that the punitive damages award offends due process. Accordingly, to the extent that the defendants' motion seeks remittitur or any other reduction of the punitive damages award in this case, their motion is due to be denied.

**CONCLUSION**

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that the Boykin Defendants' motion for reduction of punitive damages award (Doc. 570) is **DENIED**.

**DONE and ORDERED** this 22nd day of September, 2010.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE