# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PARSONS & WHITTEMORE ENTERPRISES CORPORATION, | )<br>)<br>) |
|     Plaintiff, | )<br>) |
| vs. | )    CIVIL ACTION NO. 07-00743-CG-B |
| CELLO ENERGY, LLC, et al., | )<br>)<br>) |
|     Defendants, | )<br>)<br>) |

## ORDER

On October 16, 2007, Parsons and Whittemore Enterprises Corporation ("P&W") brought a lawsuit, in part, against Cello Energy, LLC ("Cello"), Boykin Trust, LLC ("Boykin Trust"), Jack W. Boykin ("Jack Boykin"), and Allen W. Boykin ("Allen")(collectively the "Boykin Defendants"). (Doc. 1). This matter comes before the court on the Boykin Defendants' renewed motion for findings of fact and conclusions of law on the Boykin Defendants' reformation claim (Doc. 569) and P&W's response (Doc. 576). For the reasons stated below, the Boykin Defendants' renewed motion is due to be DENIED.

## FACTS

In early 2007, Cello and P&W began discussing a possible business arrangement, specifically the manufacturing of commercial quantities of biofuels that met ASTM standards from cellulosic materials. On February 12, 2007, Cello and P&W's affiliate Alabama River Pulp, Inc. ("ARP") entered into a nondisclosure agreement ("NDA1") that recognized that Cello "possesses Information, data, and experience relating to certain chemical propriety

1

manufacturing processes and such information, data, and experience are considered by [Cello] to be secret and confidential and constitute a valuable commercial asset to [Cello]" and stated that Cello would "disclose" such information "as may be necessary for the purpose of enabling [ARP] to have some basic understanding of [Cello's] program" as long as ARP did not make any use of that information and not reveal any of that information to third parties. (Plaintiff's Trial Exhibit 33).

On February 21, 2007, P&W's George Landegger sent a letter to Jack Boykin with an enclosed "revised draft Letter of Intent for your review." The letter stated that "subsequent to and as a result of the due diligence process, [the Letter of Intent] will be fleshed out and possibly modified and drafted in detail while continuing to reflect the intent of the parties." (Plaintiff's Trial Exhibit 37, p. 1). The attached "Letter of Intent" proposed a sixty-day exclusive due diligence period during which Cello and Boykin Trust "agree not to seek a liaison or funding from any entity other than P&W…" Id., p. 4). It was established at trial that Jack Boykin told George Landegger and P&W that he would not agree to an exclusive due diligence period.

On February 26, 2007, Jack Boykin sent an email to George Landegger that stated "[a]s per our conversation of Friday (2/23/07), please find attached our standard NDA. Please review and let me know your thoughts." (Plaintiff's Trial Exhibit 40, p. 1). Paragraph 6 of the attached NDA provides that:

> [Cello] agrees that it has not to date shared with P&W or any P&W Affiliate the Process Information or any other [Cello] Propriety Information relating to the technical process for creating Synthetic Fuel. [Cello] agrees not to disclose the Process Information or any other FES Proprieties Information relating to the technical process for creating the Synthetic Fuel without a written modification of this Agreement signed by an authorized representative of each party hereto.
>
> (Id., p. 4).

Paragraph 11 further states that "[t]his Agreement shall be effective for a period of ten (10) years." (Id., p. 5).

On February 27, 2007, Mr. Landegger sent a fax to Jack Boykin stating "[e]nclosed please find our re-draft of the Non-Disclosure Agreement which you sent us yesterday" and "I will be reachable at my office… or on my cell phone… should you need to discuss any changes." (Plaintiff's Trial Exhibit 41, p. 1). Paragraph 6 of the revised NDA ("NDA2") provides that:

> [Cello] agrees that it has not to date shared with P&W or any P&W Affiliate the Process Information or any other [Cello] Propriety Information relating to the technical process for creating Synthetic Fuels. [Cello] agrees not to disclose **to third parties** the Process information or any other [Cello] Propriety Information relating to the technical process for creating the Synthetic Fuels without a written modification of this Agreement signed by an authorized representative of each party hereto.
>
> (Id., p. 4)(emphasis added).

Paragraph 10 remained unchanged, stating that "[t]his Agreement shall be effective for a period of ten (10) years." (Id., p. 5). On that same day, Jack Boykin signed the NDA2 and faxed the signed copy to George Landegger, who in turn signed it as well and faxed the final signed copy to Jack Boykin. (Plaintiff's Trial Exhibit 42, pp. 1-2).

## LEGAL ANALYSIS

In the present motion, "[t]he Boykin Defendants have asserted an affirmative claim for reformation of the [non-disclosure] agreement to delete the 'to third parties' language surreptitiously added by Landegger." (Doc. 569, p. 5). Reformation of contracts is governed by Alabama Code § 8-1-2, which provides:

> When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.

Ala. Code § 8-1-2 (1975)

In other words, this code section states that a contract can be reformed in three separate instances: (1) fraud; (2) a mutual mistake; or (3) a mistake of one party which the other at the time knew or suspected. See Ala. Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480, 485 (Ala. 1987)(The above code section "provides, in addition to 'fraud' and 'mutual mistake of the parties,' that a 'mistake of one party which the other at the time knew or suspected' is an alternative ground for reformation of a written contract that 'does not truly express the intention of the parties.'").

The Alabama Supreme Court "has stated that '[t]he terms of the statute are plain and unambiguous and give the equity court power to reform or revise a written contract only when the requirements of the statute have been met.'" Goodwyn, Mills & Cawood, Inc. v. Markel Ins. Co., 911 So.2d 1044, 1048 (Ala. 2004)(quoting Am. Liberty Ins. Co. of Birmingham v. Leonard, 270 Ala. 17, 21, 115 So.2d 470, 473 (1959)). "Moreover, it is the burden of the party seeking reformation to establish by clear and convincing evidence that those requirements have been met." Id.(citing Clemons v. Mallett, 445 So.2d 276, 279 (Ala. 1984)). The Supreme Court of Alabama maintained that:

> [T]o entitle a complainant to [reformation of a contract], the proof must be clear, exact and convincing that the intention and agreement [the complainant] would have substituted in the instrument was, in fact, that of both parties thereto. If the proof is uncertain in any material respect, relief will be denied.
>
> Id. at 1049(quoting Hyatt v. Ogletree, 31 Ala.App. 8, 11, 12 So.2d 397, 399 (Ala.Ct.App. 1942)(internal citations omitted).

Furthermore, the Alabama Supreme Court has stated that "'[i]t is well established that courts should exercise great caution and require a high degree of proof in cases of reformation of written instruments…' If the averments are 'doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground that the written paper ought to

4

be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy.'" McKinnon v. Romeo, 645 So.2d 1388, 1391 (Ala. 1994)(citations omitted).

The Boykin Defendants assert that "[t]he above facts demonstrate that NDA2 is due to be reformed on the grounds that it does not express the parties' intentions due to a mistake under which Jack Boykin was operating and which Landegger knew or must have suspected." (Doc. 569, p. 6).[1] This court disagrees. While P&W may have known that Jack was hesitant to agree to a due diligence period prior to signing the NDA2, there is no evidence suggesting that Mr. Landegger knew or even suspected that the NDA2 itself did not express the intent of the parties. In fact, when Mr. Landegger sent a copy of the NDA2 to Jack via fax, he explicitly told Jack that it was a "re-draft," that there were "changes," and that if Jack wished to speak to him about these changes, he could call him at home or on his cell phone. (See Plaintiff's Trial Exhibit 41, p. 1). Jack admitted at trial that he read the document, signed the document and faxed it back to Mr. Landegger. (See June 19, 2009 Trial Tr. 76:2-5 (J. Boykin); Plaintiff's Trial Exhibit 42, pp. 1). The Alabama Supreme Court "has long held that 'a person who signs a contract document is on notice of the terms therein and is bound thereby, even if he or she fails to read the document.'" Am. Homes and Land Corp. v. C.A. Murren & Sons Co., 990 So.2d 871, 877-878 (Ala. 2008)(quoting Safeway Ins. Co. of Ala., Inc. v. Taylor, 758 So.2d 523 525 (Ala. 1999)). By executing the NDA2, Jack Boykin, on behalf of Cello, represented to P&W that it agreed with the terms of the NDA2, and absent some fraud by P&W, P&W could not have known or

---

[1] In their motion, the Boykin Defendants do not argue that there was a "mutual mistake of the parties" which requires reformation of the NDA. (See Doc. 569). Furthermore, this court granted summary judgment in favor of P&W on the reformation claim to the extent the claim was based on fraud. (Doc. 416, pp. 26-28).

suspected that Jack Boykin did not understand the terms of the NDA2 he was executing. See Id. at 878. This court finds that the Boykin Defendants have not established by clear and convincing evidence that P&W at the time knew or suspected that the NDA2 did not truly express the intention of the parties. As a result, the Boykin Defendants' renewed motion for findings of fact and conclusions of law on the Boykin Defendants' reformation claim is due to be denied.[2]

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that the Boykin Defendants' renewed motion for findings of fact and conclusions of law on the Boykin Defendants' reformation claim (Doc. 569) is **DENIED**.

**DONE and ORDERED** this 22nd day of September, 2010 .

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

[2] The Boykin Defendants alternatively ask "that this Court reform NDA2 to reflect the avowed intent of at least one party, P&W, that the restrictions of paragraph 6 should survive "for ten years, or as long as the Option Agreement and the Letter Agreement are valid." (Doc. 569, p. 9). The basis of this request stems from Mr. Landegger's deposition testimony that "[t]he duration of the Nondisclosure Agreement now will be for ten years, or as long as the Option Agreement and the Letter Agreement are valid." (Id., p. 7). This testimony, however, does not establish by clear and convincing evidence that this was a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected because even if this alleged mistake is the "avowed intent of at least one party," the Boykin Defendants have not presented any evidence that Jack Boykin or the other defendants had a mutual misunderstanding or had knowledge of Mr. Landegger's supposed intent. Therefore, the Boykin Defendants are not entitled to reformation of paragraph 11 of the NDA2.