**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PARSONS & WHITTEMORE ENTERPRISES CORPORATION,** )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**CELLO ENERGY, LLC, et al.,** )<br>)<br>Defendants, )<br>) | CIVIL ACTION NO. 07-00743-CG-B |

**ORDER**

On October 16, 2007, Parsons and Whittemore Enterprises Corporation ("P&W") brought a lawsuit, in part, against Cello Energy, LLC ("Cello"), Boykin Trust, LLC ("Boykin Trust"), Jack W. Boykin ("Jack Boykin"), and Allen W. Boykin ("Allen")(collectively the "Boykin Defendants"). (Doc. 1). In February 2007, Jack and Allen, in hopes of having P&W invest in Cello, told P&W's George Landegger and other representatives that they had made commercial quantities of biofuels that met ASTM standards from cellulosic materials at their semi-works plant in Pritchard, Alabama. Cello, thereafter, entered into a nondisclosure agreement with P&W ("NDA"), in which Cello agreed "not to disclose to third parties the Process Information or any other [Cello] Property Information relating to the technical process for creating the Synthetic Fuels without a written modification of this Agreement signed by an authorized representative of each party hereto." (Doc. 26-3, p. 4). P&W ultimately paid $2.5 million for an option to invest another $10 million in Cello, and the exclusive right to participate with the Boykin Defendants as a one-third owner of Cello in the commercial development of the

1

above technology and other rights as provided in the agreements between the parties. After receiving the $2.5 million payment, the Boykin Defendants entered into an agreement with BioFuels Operating Company, LLC ("BioFuels"), which was allegedly a violation of Cello's obligation in the NDA. (Doc. 158, p. 1). P&W also maintained that during discovery it learned that the Boykin Defendants, despite their assurances to the contrary, had not made fuel from cellulosic materials in commercial quantities at the semi-works plant and that the fuel that they claimed to have made subsequently in a plant constructed by Cello was in essence fossil-based diesel fuel that they had purchased.

On June 29, 2009, a jury returned a verdict in favor of P&W and against the Boykin Defendants for a total of $10.4 million. First, the jury found from a preponderance of the evidence that P&W proved its breach of the NDA against Cello and Boykin Trust and awarded P&W $2,827,123.00. Second, the jury found from a preponderance of the evidence that there was a business relationship between P&W and the Boykin Defendants and that Biofuels and its related parties knew of that business relationship at the time of the alleged interference. Third, the jury found from a preponderance of the evidence that P&W proved its fraud claim against Cello, Boykin Trust, Jack Boykin, and Allen Boykin and awarded P&W $104,437.50. Fourth, the jury found by clear and convincing evidence that all four defendants consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to this claim and awarded punitive damages of $7.5 million. (See Doc. 560-8). Final judgment was entered on September 27, 2010. This matter is now before the court on P&W's post-judgment motion to alter the jury's verdict (Doc. 573) and the Boykin Defendants' response (Doc. 583). For the reasons stated below, P&W's post-judgment motion is due to be denied.

Rule 60(a) of the Federal Rules of Civil Procedure states that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The Court of Appeals for the Eleventh Circuit has provided that "a court has the power, when appropriate, to go beyond a Rule 60(a) correction of mere 'clerical errors'" and "'may, within its sound discretion, amend a special verdict after it is rendered to make it conform to the jury's obvious, but unexpressed intention." Stuckey v. Northern Propane Gas Co., 874 F.2d 1563, 1573 (11th Cir. 1989)(quoting Aquachem Co. v. Olin Corp., 699 F.2d 516, 520 (11th Cir. 1983)).

In its post-judgment motion, P&W asks this court to "alter or amend the jury's verdict to award a total of $2,931,560.50 in compensatory damages to P&W for each" of its breach of contract claim and its fraud claim. It maintains that:

> On the verdict form, the jury found Cello Energy, LLC and Boykin Trust, LLC liable to P&W for breach of contract in the amount of $2,827,123. The amount was obviously comprised of the $2,500,000 that P&W paid to Cello Energy, LLC and Boykin Trust, LLC, in reliance on the Boykin Defendants' misrepresentations, in order to participate in developing the Technology commercially, plus $327,123 in pre-judgment interest. The jury also found all of the Boykin defendants guilty of fraud. However, the verdict form shows an award of compensatory damages of only $104,437.50 on the fraud claim – one-half of the damages P&W requested for wasted resources – and does not include the amount paid by P&W in reliance on the Boykin defendants' misrepresentations. The jury was obviously unaware that, although the same damages may be awarded on separate claims, there can be only one recovery, and therefore apportioned the compensatory damages between the two claims…
>
> The jury obviously intended to award P&W the full amount of compensatory damages that resulted from the Boykin defendants' fraud, including the $2.5 million dollars (plus pre-judgment interest) that P&W paid the Boykin defendants in reliance on their misrepresentations. It simply makes no sense that the jury would find the Boykin defendants guilty of fraud, award punitive damages of $7.5 million dollars against them, and deny P&W the full measure of compensatory damages resulting from the fraud. It is illogical that the jury would award P&W an amount of punitive damages that is nearly 72 times the compensatory damages awarded for the fraud claim when P&W requested punitive damages of only three times compensatory damages. The only possible explanation for these anomalies is that the jury intended for P&W to recover the full $2,931,560 in compensatory

damages for both the breach of contract claim and the fraud claim, but believed that it would not award the same damages for different claims without providing a double recovery to P&W.

(Doc. 573, pp. 2-3).

This court does not find P&W's argument persuasive. In closing arguments, counsel for P&W asked for damages of $3,035,998 on its claims of misrepresentation, representing the amount of the option payment of $2,500,000, interest of $327,123, and the wasted resources claim. (See Trial Tr. 2027:10-16 (June 26, 2009)). He then asked the jury "for [a] compensatory damage verdict on **every count** of the three million $35,000…" (Id., 2112:11-14)(emphasis added). The verdict form was clearly marked with each individual count, and this court properly instructed the jury and did not include any instructions concerning "double recovery." (See Doc. 560-6 & Doc. 560-8). In fact, P&W's counsel told the jury to not concern themselves with double recovery because the judge "will take care of that." (Trial Tr. 2112:8-11(June 26, 2009)). This court finds that P&W has failed to show that it was the jury's obvious, but unexpressed, intention to award more than the $104,437.50 on the fraud claim.

## CONCLUSION

It is **ORDERED** that P&W's motion to alter the jury's verdict (Doc. 573) is **DENIED**. It is **FURTHER ORDERED** that **P&W is to advise the court within 14 days** of entry of this order if it intends to pursue any of the counts for equitable relief that remain in the Amended Complaint (Doc. 158), and if so, which portions of which counts, and/or if there are any other outstanding issues that have not been addressed by the court.

**DONE and ORDERED** this 29th day of September, 2010.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE